**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
TIMOTHY HARRISON,

                     Plaintiff,

            -against-

INCORPORATED VILLAGE OF FREEPORT,
THE VILLAGE OF FREEPORT POLICE
DEPARTMENT, POLICE OFFICER
KENNEDY BADGE NUMBER 110, POLICE
OFFICER FREDDY PEREIRA, BADGE
NUMBER 180 (KENNEDY & PEREIRA
INDIVIDUALLY AND AS POLICE
OFFICERS),

                    Defendants.
--------------------------------------------------------X

**MEMORANDUM OF**
**DECISION & ORDER**
2:16-cv-2442 (SJF) (AYS)

**FILED**
**CLERK**

12:04 pm, Oct 30, 2020

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

<u>**APPEARANCES:**</u>

**Samuels & Associates, P.C.**
*Attorneys for the Plaintiff*
135-13 Hook Creek Boulevard
Rosedale, NY 11422
      By:    Violet Elizabeth Samuels, Esq., Of Counsel.

**Bee Ready Fishbein Hatter & Donovan, LLP**
*Attorneys for the Defendants*
170 Old Country Road, Suite 200
Mineola, NY 11501
      By:    Andrew Kenneth Preston, Esq.,
                Michael Paul Siravo, Esq. Of Counsel.

**FEUERSTEIN, District Judge**:

      Timothy Harrison (the "Plaintiff") brought a 42 U.S.C. § 1983 action against the Town of

Hempstead, the Incorporated Village of Freeport, the Village of Freeport Police Department, and

Police Officers Kennedy (the Plaintiff did not provide Officer Kennedy's first name) and Freddy

Pereira, in their individual and official capacities, (the "Defendants") in New York State

Supreme Court. The Plaintiff was a passenger in a vehicle that was the subject of a 911 call

about a purported car chase.  The Plaintiff also alleged that officers from the Freeport Police Department detained him and the vehicle's other inhabitants and that during this detention, officers removed him from the vehicle and caused him great pain by throwing him to the ground; pushing his face into concrete; handcuffing him and sitting on him; and leaving him in handcuffs, exposed to the cold weather without a coat.

The Plaintiff raised claims under the Constitution, § 1983, 42 U.S.C. § 1988, and tort law. He asked for unspecified damages.  The Defendants removed the case to federal court, and the matter went before the Honorable Arthur D. Spatt.  The case was reassigned to the undersigned on June 30, 2020.

The Defendants now move for summary judgment.  For the reasons that follow, the Court grants the motion in part and denies it in part, rules that the individual officers are not entitled to qualified immunity, and dismisses defendants the Village of Freeport and the Village of Freeport Police Department from the action.

## I.   BACKGROUND

The following facts are taken from the parties' FED. R. CIV. P. 56.1 statements.  ECF 41-1, 46.  Unless otherwise noted, the facts are not in dispute.

### A.  The Events Leading Up to the Plaintiff's Detention

Although the parties agree that the events in question (hereinafter, the "incident") occurred in January 2014, the Defendants contend that the incident started around 11:00 pm on January 14, and the Plaintiff contends the incident started after 11:40 pm on January 15, and claims that the date is highly relevant to the action, because the temperature forms one of the bases for his claims.  ECF 46 at 4.

On the evening of the incident, non-party Krista Frank ("Frank") was inside a bodega on Main Street in the Village of Freeport.  An unknown African American male (the "Unknown Male") approached her and attempted to talk to her.  The Defendants allege that Frank left the bodega, followed by the Unknown Male.  The Plaintiff asserts that Frank and the Unknown Male exited the bodega at the same time, and that Frank was not referring to the Plaintiff when describing the Unknown Male.  *Id.* at 8–9.  Frank saw the Unknown Male walk up to a Silver Toyota Scion (the "Scion"), which contained multiple men.

The Scion was parked next to Frank's car.  The Unknown Male walked over to Frank's car, which Frank had since entered, and tried to speak with her again.  She replied that she was not interested in speaking with him.  The Defendants allege that the Unknown Male attempted to open the door to Frank's locked car, pulling the door so hard that he removed the door handle; the Plaintiff denies that he did this.  *Id.* at 9.

Frank drove away, noticing soon after that the Scion was following her.  She called the police, while the Scion was still behind her.  While Frank was on the phone with the police, she saw police lights, though the parties disagree about the direction from which the police arrived. *Id.* at 10.  The police informed Frank that they had pulled over a silver Scion, at which point Frank observed that the Scion was no longer following her.

### B.  The Stop and Detention

Officer Pereira, on patrol on the night of the incident, received a radio call of a vehicle chase another vehicle.  The Defendants allege that shortly thereafter, Officers Curtis ("Curtis") and Kennedy ("Kennedy") stopped the Scion which contained, among others, the Plaintiff. Pereira arrived after Curtis and Kennedy had pulled the vehicle over.  *Id.* at 11.  The Plaintiff

admits that Curtis and Kennedy stopped his vehicle, but denies that his was the vehicle pursing Frank. *Id.*

### 1. The Defendants' Summary of the Incident

The Defendants claim that Curtis performed the stop, with Kennedy in assistance. *Id.* at 11. Curtis approached the vehicle from the driver's side, and Kennedy approached it from the passenger's side. *Id.* at 12. The vehicle's occupants were screaming at Curtis, and the Plaintiff exited the vehicle, without prompting from either Kennedy or Curtis. *Id.* at 12–13. Kennedy told the Plaintiff to sit on the curb, next to the vehicle. *Id.* Pereira arrived at the location of the vehicle stop and saw the Plaintiff sitting on the grass area by the curb next to the vehicle, screaming profanities at Curtis and Kennedy, both of whom were standing nearby. *Id.* at 14.

The officers asked the Plaintiff for his identification, and he replied that it was in his jacket, located inside the vehicle. *Id.* As Kennedy handed the jacket to the Plaintiff, Sergeant Barry McGovern ("McGovern"), asked Kennedy if he had checked the jacket for weapons. *Id.* Kennedy pulled the jacket back, at which point the Plaintiff tried to grab the jacket. *Id.* at 14–15. McGovern and Pereira then started handcuffing the Plaintiff. *Id.* at 15. Kennedy then escorted the Plaintiff to the back seat of his police car. *Id.* at 16.

### 2. The Plaintiff's Synopsis of the Incident

The Plaintiff denies that Kennedy acted only in a supporting role, and states that Curtis and Kennedy both approached the vehicle from the passenger's side. *Id.* at 12. He claims that although Curtis was acting aggressively towards the people in the vehicle, no one was screaming at that time. *Id.* The Plaintiff contends that he did not exit the vehicle on his own, *id.* at 13, but rather that Kennedy approached the passenger's side of the vehicle, opened the rear door, grabbed the Plaintiff, and forcibly removed him from the vehicle, *id.* at 12.

4

Kennedy told the Plaintiff to stand still. *Id.* at 13. Pereira then told the Plaintiff to get on the ground. *Id.* When the Plaintiff asked why, Pereira threw him to the ground and kneeled on his back, and, along with Kennedy, pressed his face on the concrete while Kennedy forcefully applied handcuffs behind his back. *Id.* at 12–15. It was only at this point that the other occupants of the car started yelling, while Harrison cried out that he was not resisting. *Id.* at 12–13.

Although the officers initially asked the Plaintiff for his identification while he was still sitting in the vehicle, they did not ask again, including after they removed him from the vehicle, threw him onto the ground, and handcuffed him. *Id.* Throughout the incident, the Plaintiff's jacket remained in the vehicle. *Id.*

The Plaintiff remained on the ground, with his head pushed sideways and into the concrete, while the officers applied pressure to his lower extremities. *Id.* at 15. The Plaintiff cried out about pain in his knees and ankles. *Id.* Kennedy then escorted the Plaintiff to the back seat of his police car. *Id.* He sat in the car, jacketless, on a cold night and with the windows down for approximately an hour and a half before being released. *Id.* at 15–16.

**C. Subsequent Events**

Following her call to the police, Frank went to the Freeport Police Station, where officers told her that, because the Scion had followed her through multiple municipalities, she would need to speak with the Nassau County Police Department ("NCPD"). An NCPD officer arrived at the station, and Frank recounted the incident to the NCPD officer. The officer told Frank what pressing charges against the perpetrator entailed, and she declined to press charges.

The Plaintiff remained in the back seat of Kennedy's car following the incident. Approximately one hour later, he was released from custody, after Frank had declined to press charges.

### D.  Procedural History

The Plaintiff commenced the action against the Town of Hempstead, the Incorporated Village of Freeport, the Village of Freeport Police Department, and Kennedy and Pereira in their individual and official capacities, in New York State Supreme Court.  ECF 1-1.  The Plaintiff argued that Officers Kennedy and Pereira violated his Fourth and Fourteenth Amendment Rights by way of using excessive force.  *Id.* at 9–13.  He alleged that he was falsely arrested without probable cause.  *Id.*  at 9.  He claimed that the Village of Freeport Police Department was liable under § 1983 for failing to supervise and train its police officers and for overlooking and covering up its officers' misconduct.  *Id.* at 13–16.  He claimed that the Village of Freeport Police Department violated 42 U.S.C. § 1988 by showing willful blindness to the conduct of its employees.  *Id.* at 13.  He also argued that his incident with the police was caused "wholly, solely or in part by the reasons of the careless and negligence of" the Town of Hempstead and the Incorporated Village of Freeport" because the Freeport Police Department was a sub-entity of both of those municipalities, and the police officers were their agents.  *Id.* at 16–21.  The Plaintiff further raised state law claims for assault and battery.  *Id.* at 21.  The Plaintiff asked for unspecified damages.  *Id.* at 25.

The Defendants removed the action to federal court, and answered the complaint.  ECF 1, 12.  In July 2016, the parties stipulated under Federal Rule of Civil Procedure ("FED. R. CIV. P.") 41(a) to a voluntary dismissal of the Town of Hempstead from the action.  ECF 16, 17.

The Defendants now move under FED. R. CIV. P. 56 for summary judgment.  ECF 43. That motion is presently before the Court.

## II.    DISCUSSION

The Plaintiff's opposition to the pending motion contained numerous labeling errors, citing incorrectly to the location of items in the record that were either located elsewhere, or not present in the record at all.  This prompted the Court to order the Plaintiff to re-file the opposition, and to permit the Defendants to subsequently file a new reply.  ECF 11/15/19 entry. The Plaintiff filed that new opposition in January 2020.  ECF 61.  The Defendants filed their new reply shortly thereafter.  ECF 62.  In May 2020, the Court granted the Plaintiff's request for leave to file a sur-reply, ECF 5/19/2020 entry, which the Court considered as well.

The Defendants raised seven arguments in favor of granting summary judgment: (1) the Court should dismiss the Plaintiff's false arrest claim because the police had probable cause to detain the Plaintiff; (2) the excessive force claim fails because the record is devoid of the Plaintiff's having suffered any injury; (3) for the same reason, the Court must dismiss the assault and battery claims; (4) the Plaintiff's negligence claim is improper because it is based on an allegedly unlawful detention; (5) the Plaintiff does not establish the elements of § 1983 municipal liability; (6) the individual defendants are entitled to qualified immunity; and, (7) the Village of Freeport Police Department is not a proper defendant.  ECF 44 at 9–21.

For the reasons that follow, the Court grants the motion in part and denies it in part.  In addition, the Court dismisses the action as to the Village of Freeport and the Village of Freeport Police Department.

### A. Procedural Issues

In reply, the Defendants contend: (1) that the Plaintiff's opposition does not comply with the Court's Individual Rules because it is eight pages in excess of the page limit; (2) Plaintiff submitted, *inter alia*, an amended opposition to the Defendants' Rule 56.1 statement, which the Court should disregard; and (3) the Court should also disregard the affidavit of a social worker, Sonia Margaret Smith ("Smith"), because the affidavit describes a visit occurring after the filing of the summary judgment motion, and no record of Smith appears in the Plaintiff's Rule 56.1 counterstatement.  ECF 62 at 2–3.  As to (3), they also claim that the affidavit violates FED. R. CIV. P. 26(a), because it provides no supporting documentation of Smith's qualifications as an expert.  *Id.* at 3.  They add that if the Court decides to consider the affidavit, that the Court hold the summary judgment motion in abeyance, so that they may depose Smith.  *Id.*

In the sur-reply, the Plaintiff claims that he did not file the amended counterstatement in bad faith.  ECF 66 at 3.  The Plaintiff adds that he will withdraw the counterstatement if the local rules prohibit it.  *Id.*

The Plaintiff also seeks for the Court to consider Smith's affidavit, because the Plaintiff submitted the affidavit within the case's discovery timeline, in that he served on the Defendants, without objection, a notice of expert witness regarding Smith on November 28, 2017.  *Id.* at 4. This comports with the timeline of discovery, because (1) discovery was supposed to be concluded by July 16, 2017; (2) the case was marked settled in June 2017; (3) the case was marked not settled on August 16, 2017, effectively reopening discovery; and (4) the case still had discovery pending in December 2017.  *Id.*

The Plaintiff adds that the affidavit was supposed to appear in the original opposition to the summary judgment motion, but was omitted (one of the Plaintiff's myriad filing errors).  *Id.*

at 4–6.  The Plaintiff further asserts that he did not need to provide Rule 26(a) documentation, because Smith was retained for the case to provide expert testimony, and the Court should consider her affidavit because: she is not a surprise witness; she does not testify frequently; she has no publications; she is not owed any compensation for her testimony; and her testimony is crucial to establishing that the Plaintiff has permanent psychological injuries as a result of the incident.  *Id.* at 6–7.

The Plaintiff attaches several documents to the sur-reply:  1) a notice of expert witness Smith, submitted to the Defendants on November 25, 2017, ECF 66-1, which includes a HIPAA authorization to obtain the Plaintiff's records from Smith, as well as Smith's curriculum vitae, *id.*; and 2) a December 2017 letter from the Defendants' counsel to Smith, requesting the release of the Plaintiff's medical records.  ECF 66-4.

### 1.  The Length of the Opposition and the Amended Counterstatement

The Court declines to grant the Defendants' motion on the basis of the Plaintiff's overly long opposition.  *See Offor v. Equal Emp't Opportunity Comm'n*, No. 15-CV-3175 (ADS) (ARL), 2016 WL 3747593, at *2 (E.D.N.Y. July 11, 2016); *see also Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) (courts have broad discretion to determine whether to overlook a party's failure to comply with local procedural rules).  However, Judge Spatt's local rules required a party to file a Rule 56.1 counterstatement within seven days of receiving the moving party's Rule 56.1 statement, and the Plaintiff filed the amended counterstatement, dated December 24, 2019, more than a year and a half after the filing of the Defendants' Rule 56.1 statement.  In addition, the Plaintiff's Rule 56.1 counterstatement again mislabeled and failed to provide exhibits, undermining the Defendants' ability to effectively file a reply.  Accordingly, the Court disregards the amended counterstatement.

### 2.  Smith's Affidavit

FED. R. CIV. P. 26(a)(2) provides that a party presenting an expert witness must submit a written report that discloses the expert witness to the opposing party.  The written report must contain: (1) a complete statement of all opinions the witness will express, and the basis and reasons for those opinions; (2) the facts or data considered by the witness in forming those opinions; (3) any exhibits the witness will use to summarize or support those opinions; (4) the witness's qualifications, including a list of all publications authored in the past ten years; (5) a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition; and (6) a statement of the compensation paid to the witness for study and testimony in the present action.  FED. R. CIV. P. 26(a)(2)(B)(i)–(vi).

Under FED. R. CIV. P. 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by [Rule] 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Courts in this Circuit have ruled that the failure to disclose an expert witness may prejudicially ambush the opposing party. *Evans v. United States*, 978 F. Supp. 2d 148, 153 (E.D.N.Y. 2013); *Palma v. Pharmedica Commc'ns, Inc.*, No. 00-CV-1128 (AHN), 2002 WL 32093275, at *2 (D. Conn. Mar. 27, 2002).

Where, as here, the opposing party claims prejudice on the basis of being unable to depose an expert witness, these concerns are troubling. *See Colon v. Linchip Logistics LLC*, 330 F.R.D. 359, 367 (E.D.N.Y. 2019) ("In particular, being denied the opportunity to depose an expert witness would leave Plaintiff in an unfairly weakened position for trial.").  The failure to disclose an individual as an expert witness until after the close of discovery "subverts the purpose of mandatory disclosures and undoubtedly prejudices [an] opponent." *Williams v.*

*Bethel Springvale Nurson Home, Inc.*, No 14-CV-9383 (NSR), 2018 WL 1662644, at *5 (S.D.N.Y. Apr. 5, 2018); *see Rivera v. United Parcel Serv.*, 325 F.R.D. 542, 548 (S.D.N.Y. 2018).

Despite this general rule, "treating physicians have consistently been held not to be experts within the meaning of [Rule] 26(a)(2)." *See Thompkins v. Santos*, No. 98-Civ.-4634 (MBM) (HBP), 1999 WL 1043966, at *7 n.5 (S.D.N.Y. Nov. 16, 1999) (Pitman, M.J.) (collecting cases); *see also Zanowic v. Ashcroft*, No. 97-Civ.-5292 (JGK) (HBP), 2002 WL 373229, at *2 (S.D.N.Y. Mar. 8, 2002) ("It is well settled that a treating physician is not subject to the disclosure obligations set forth in [Rule] 26(a)(2)(B)."). Under Rule 26(a)(2)(C), a treating physician need disclose only the subject matter on which she is expected to testify, and a summary of the facts and opinions to which she is expected to testify. *See Olutosin v. Gunsett*, No. 14-CV-00685 (NSR), 2019 WL 5616889, at *2 (S.D.N.Y. Oct. 31, 2019) ("These disclosures are considerably less extensive than the report[s] required by Rule 26(a)(2)(B).") (internal quotation marks omitted). Courts have not established a standard for distinguishing between treating physicians and experts; however, "'[t]he critical factor . . . appears to be why the physician was retained.'" *Evans*, 978 F. Supp. 2d at 153 (quoting *Zanowic*, 2002 WL 373229, at *2). More specifically, "whether a physician is a treating or consulting physician appears to turn on whether the patient saw the physician—for treatment or for testimony." *Zanowic*, 2002 WL 373229, at *2.

Even if a court deems a physician to be an expert, instead of a treating physician, a court has discretion to consider the physician's materials, even if a party submitted them in violation of Rule 26(a)(2). *Evans*, 978 F. Supp. 2d at 154 (citing *Lore v. City of Syracuse*, No. 00-CV-1833, 2005 WL 3095506, at *3 (N.D.N.Y. Nov. 17, 2005)). In deciding whether to exercise its

discretion to preclude evidence submitted in violation of Rule 26(a), the Court considers: (1) the plaintiff's explanation for the failure to comply with the disclosure requirement; (2) the importance of the testimony of the potentially precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance. *See BF Advance, LLC v. Sentinel Ins. Co., Ltd.*, No. 16-CV-5931 (KAM) (JO), 2018 WL 4210209, at *6 (E.D.N.Y. Mar. 20, 2018) (citing *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006)).

Even where a Court considers a witness to be an expert, "[p]recluding testimony from the expert under [Rule 37(c)(1)] is a drastic remedy that should only be applied in cases where the party's conduct represents flagrant bad faith and callous disregard of the federal rules." *McNerney v. Archer Daniels Midland Co.*, 164 F.R.D. 584, 587 (W.D.N.Y. 1995) (citing *Hinton v. Patnaude*, 162 F.R.D. 435, 439 (N.D.N.Y. 1995)); *but see Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006) (stating that Rule 37(c)(1) has no bad faith requirement). For instance, in *Evans*, the court allowed the consideration of an affidavit disclosed after the close of discovery because the failure to timely disclose was harmless because the opposing party "was well aware of the identify of the undisclosed witness and the scope of knowledge well before the trial." 978 F. Supp. 2d at 154 (internal quotation marks omitted) (citing *Morganstern v. Cty. of Nassau*, No. 04-CV-0058 (JS) (ARL), 2008 WL 4449335, at *3 (E.D.N.Y. Sept. 29, 2008); *Fleet Capital Corp. v. Yamaha Motor Corp.*, No. 01-CV-1047 (AJP), 2002 WL 31174470, at *6 (S.D.N.Y. Sept. 19, 2002)).

Smith's affidavit indicates that she is a social worker licensed in the state of New York, ECF 61-11 at 2, and that she met with the Plaintiff on four occasions over the course of two

years to conduct psychological evaluations: July 3, 2017, July 4, 2017, September 7, 2017, and April 14, 2019; *id.* at 3.  She has not been retained for psychotherapy treatment.  *Id.*

Based on the foregoing, the Court denies the Defendants' request to disregard Smith's affidavit.  As an initial matter, the Plaintiff provided Rule 26(a) notice, albeit incomplete notice, of Smith's potential testimony prior to the close of discovery.  In January 2017, United States Magistrate Judge Anne Y. Shields ordered the parties to complete discovery by May 1, 2017. ECF 1/13/17 entry.  Judge Shields later extended that deadline to July 16, 2017.  ECF 4/15/17 entry.  Prior to the expiration of that deadline, the parties halted discovery, agreed to settle the case, and the case was dismissed.  ECF 27, 29.

After the parties ultimately could not settle, and the Court reopened the case, ECF 7/11/17 entry, the Defendants on November 6, 2017 moved for discovery.  ECF 33.  In that motion, the Defendants sought to conduct depositions of four additional witnesses.  *Id.*  At a November 22, 2017 status conference, the Defendants contended that they were having trouble locating two of those witnesses.  ECF 36.  On December 6, 2017, the Defendants asked for a protective order prohibiting the Plaintiff from contacting those two witnesses.  ECF 37.

While the Plaintiff did not see Smith until after bringing this lawsuit, the overall timeline of events counsels in favor of accepting the Smith affidavit.  Conversely, and as noted by the Defendants, the Plaintiff's submission fails to comply with Rule 26(a)(2)(B)(iii), (iv), (v), and (vi) in that it failed to provide a list of any exhibits, prior publications, prior testimony, or a statement of compensation.  Thus, although the Plaintiff gave timely notice of Smith's potential testimony, the notice did not comply with Rules 26, nor 37; thus, the analysis must proceed to the four-factor *Patterson* test.

The first factor, the reason for the Plaintiff's noncompliance, invokes the distinction between whether or not the Plaintiff retained Smith for trial testimony.  The Plaintiff asserts that he did not retain Smith for testimony, and that her affidavit is based upon and limited to her personal knowledge of her treatment of the Plaintiff, and thus, that she did not need to comply with Rule 26(a)(2)(B).  This comports with in part Smith's own sworn statement about the reason for her testimony.  ECF 66-2 at 3 ("If called to testify in this case, my opinion will be based on my knowledge of the facts and observations I made during my sessions with Timothy Harrison.").  It also aligns with the original notice of expert witness sent in November 2017, which identifies Smith as the Plaintiff's treating physician.  ECF 66-1.

However, Smith's own assessment of her relationship with the Plaintiff is to the contrary, as her affidavit states that she had not been retained for treatment.  ECF 61-11 at 3.  That affidavit is dated April 15, 2019.  *Id.* at 7.  At the time the Plaintiff had sent the November 2017 notice of expert witness, the Plaintiff had seen Smith for evaluation three times in as many months, and he may have believed at the time that he would retain her for ongoing treatment. *Id.*; ECF 66-1.  Case law does not suggest that the party's mental state as to his relationship with a health professional is pertinent to the treating physician question.

In addition, the Plaintiff did not see Smith until after the litigation began.  *See Evans*, 978 F. Supp. 2d at 154 ("Dr. Gerard was retained by the patient for treatment and was not specially employed for her testimony, as the Plaintiff had visited Dr. Gerard *multiple times before this litigation began* and was given treatment related to his injuries.") (emphasis added).  Based on the foregoing, the Court declines to consider Smith to be a treating physician.

The Plaintiff's November 2017 notice is relevant as to the first factor of the *Patterson* test, where courts consider any explanation for a Rule 26 violation.  *See Downey v. Adloox, Inc.*,

No. 16-CV-1689 (JMF), 2018 WL 794592, at *1 (S.D.N.Y. Feb. 8, 2018) (observing that the first factor cut against the plaintiff, who did not even attempt to offer a legitimate explanation for their failure to disclose).   Accordingly, the first factor of that test slightly favors the Plaintiff, who at the time he submitted the notice of expert witness, had seen Smith multiple times, and perhaps had reason to believe that she was or would become his treating physician, even though that ultimately did not occur.   In addition, Smith would not make a sworn statement about not being retained for another eighteen (18) months, meaning that at the time the Plaintiff made the November 2017 disclosure, he did not know of Smith's future countervailing position.

The second factor also favors the Plaintiff.  The Defendants contend that the Court should dismiss the excessive force claim in part because the Plaintiff did not demonstrate any physical injuries from the incident.  The Plaintiff argues that he suffered both physical and psychological injury.  *See, e.g.*, *Frego v. Kelsick*, No. 11-CV-5462 (SJF) (SIL), 2015 WL 4728922, at *9 (E.D.N.Y. Aug. 10, 2015) ("[I]t is well-established that psychological injuries may be a compensable component of excessive force cases.").  It is thus critical to the Plaintiff's claim to substantiate his allegation of psychological injury.

The Defendants reached out to Smith in December 2017, almost immediately upon receiving her notice of expert testimony.  ECF 66-4.  Their interaction with Smith ended there, and the record is devoid of any attempt by them to depose her.  A HIPAA request, seeking x-rays and MRI films, items that Smith as a psychologist would be unlikely to possess, further demonstrates that they did not make substantive efforts to engage with her.

In addition, the Plaintiff attempted to file the Smith affidavit along with his original opposition to the summary judgment motion, even though he failed to include the affidavit, one of the many procedural shortcomings in the opposition.  ECF 48 at 5 ("Attached hereto as

Exhibit 'J' is a copy of SONIA MARGARET SMITH, PhD, LCSW-R, Expert Psychological Report").  In their original reply, the Defendants took no notice of this error, and did not comment on Smith's missing affidavit at all.  ECF 52.  It is only now, at this advanced stage of summary judgment proceedings, after the Plaintiff properly submitted the affidavit, and now nearly three years after they first received notice of Smith's testimony, that they claim prejudice. *See New World Solutions, Inc. v. NameMedia Inc.*, 150 F. Supp. 3d 287, 308 (S.D.N.Y. 2015) ("NameMedia had no opportunity prior to the Motions for Summary Judgment to question Coyne."); *cf. Nettles v. New York*, No. 07-CV-5302 (LDW) (AKT), 2010 WL 11632500, at *6 (E.D.N.Y. Jul. 28, 2010) (finding prejudice because of the inaccessibility of a psychologist and the "lack of time prior to trial to take the deposition" of the psychologist).  The Court declines to credit that assertion.

As to the fourth and final *Patterson* factor, the Defendants have requested a continuance. In light of the Defendants' delay in raising concerns about Smith and the further delay that a continuance would bring to this already protracted summary judgment motion practice, this request is denied.  *See Lidle v. Cirrus Design Corp.*, No. 08-Civ-1253 (BSJ) (HBP), 2009 WL 4907201, at *7–8 (S.D.N.Y. Dec. 18, 2009); *see also Nixon v. TWC Admin. LLC*, No. 16-CV-6456 (AJN), 2019 WL 1428348, at *2 (E.D.N.Y. Mar. 29, 2019) ("[T]o the extent that any sanction for Defendant's failure to disclose were appropriate, that sanction would be reopening discovery for the limited purpose of permitting Plaintiffs to take the depositions of the newly discovered corporate representatives at Defendant's cost.  If Plaintiffs' claims could survive summary judgment, they would be entitled to ask the Court to impose that sanction.").  Given the Defendant's delay in seeking a deposition until now, the Court departs from the *Nixon* holding to the extent that it ruled that the party bringing the witness would bear the cost of the deposition.

16

Based on the foregoing, the Court declines to grant the request to preclude the Smith affidavit.

## B.  The Legal Standard

Rule 56(a) provides that a court may grant summary judgment when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

"A genuine issue of fact means that 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).  "Where the moving party demonstrates 'the absence of a genuine issue of material fact,' the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."  *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).  "The evidence of the party opposing summary judgment is 'to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'"  *Wright*, 554 F.3d at 266 (parenthetically quoting *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)).

To defeat a motion for summary judgment, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts," and "may not rely on conclusory allegations or unsubstantiated speculation."  *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (internal quotation marks omitted).  "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper."  *Gallo v.*

*Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994) (citing *Dister v Continental Grp., Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988)).

### C.  Claims Asserted for the First Time in Opposition to Summary Judgment

At numerous points in his opposition, the Plaintiff contends that he raised claims against the Defendants under both 42 U.S.C. §§ 1983 and 1988.  However, the Plaintiff never raised a § 1988 claim in his complaint, except in connection with the Village of Freeport Police Department's alleged willful blindness.  ECF 1-1 at 13.  Thus, the Plaintiff may not assert a new claim at this stage of the action.  *See, e.g.*, *Mangaroo v. Boundless Techs., Inc.*, 253 F. Supp. 2d 390, 402 n.7 (E.D.N.Y. 2003) ("Since this claim was not asserted in the Complaint, the Court will not consider it.").

In any event, the Village of Freeport Police Department is not a proper defendant and it also appears that the Plaintiff has abandoned that claim.  Accordingly, the Court does not consider any § 1988 argument.

### D.  False Arrest Claim

A § 1983 claim for false arrest rests upon the Fourth Amendment right of an individual to be "secure . . . against unreasonable searches and seizures," including arrests without "probable cause."  U.S. Const. Amend. IV; *accord Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).  "A section 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law."  *Jenkins v. City of New York.*, 478 F.3d 76, 84 (2d Cir. 2007) (quoting *Weyant*, 101 F.3d at 852).  Further, in New York State, false arrest and false imprisonment claims are identical.  *Rizzo v. Edison, Inc.*, 419 F. Supp. 2d 338, 345 (W.D.N.Y. 2005), *aff'd*, 172 F. App'x 391 (2d Cir. 2006).  "To state a claim for false arrest under New York law, a plaintiff must show that '(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the

confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged.'" *Savino v. City of New York.*, 331 F.3d 63, 75 (2d Cir. 2003) (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)); *see also Berg v. Kelly*, 897 F.3d 99, 106 (2d Cir. 2018).

The existence of probable cause is a complete defense to a § 1983 false arrest claim, and constitutes justification for the arrest. *Jackson v. City of New York*, 939 F. Supp. 2d 235, 248 (E.D.N.Y. 2013) (citing *Weyant*, 101 F.3d at 852; *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995)); *see also Jocks v. Tavernier*, 316 F.3d 128, 135 (2d Cir. 2003) ("If probable cause existed, [the defendant] as a police officer would be privileged to make an arrest."). "A police officer has probable cause for an arrest when he has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *Swartz v. Insogna*, 704 F.3d 105, 111 (2d Cir. 2013) (quoting *Weyant*, 101 F.3d at 852); *see also Gerstein v. Pugh*, 420 U.S. 103, 111–12, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975) (alteration in original). "Probable cause is not a particularly demanding standard." *United States v. Scala*, 388 F. Supp. 2d 396, 401 (S.D.N.Y. 2005). "The eventual disposition of the criminal charges is irrelevant to the probable cause determination." *Hahn v. Cty. of Otsego*, 820 F. Supp. 54, 58 (N.D.N.Y. 1993) (citing *Pierson v. Ray*, 386 U.S. 547, 555, 87 S. Ct. 1213, 18 L. ED. 2d 288 (1967)).

The existence of probable cause "must be determined by reference to the totality of the circumstances," *Manganiello v. City of New York.*, 612 F.3d 149, 161 (2d Cir. 2010), and may be "based upon mistaken information, so long as the arresting officer was reasonable in relying on that information," *Bernard*, 25 F.3d at 102 (internal quotation marks omitted); *see Coyle v.*

*Coyle*, 354 F. Supp. 2d 207, 212 (E.D.N.Y. 2005).  That a party may ultimately be acquitted has

no bearing on probable cause to arrest.  *James v. Alvarez*, Nos. 05-CV-6992, 06-CV-3007 (CBA)

(LB), 2008 WL 11414567, at *7 (E.D.N.Y. Feb. 15, 2008).  Further, probable cause "may be

determined as a matter of law provided there is no factual dispute regarding the pertinent events

and the knowledge of the officers," *Jackson*, 939 F. Supp. 2d at 249; *Virgil v. City of New York.*,

No. 17-CV-5100, 2019 WL 4736982, at *4 (E.D.N.Y. Sept. 27, 2019).

The Defendants argue that the Court must dismiss the false arrest claim, because the

evidence demonstrates that they had probable cause to detain the Plaintiff until Frank decided not

to press charges against him.  ECF 44 at 5.  The audio recording of Frank's 911 call revealed

that: (1) Frank, along with other passengers in her car, called the police and said they were being

followed by the Scion; (2) they were previously on Sunrise Highway but were driving on back

streets to in Freeport in order to avoid the Scion; and (3) they said they were driving on South

Ocean Avenue in Freeport, having just recently passed a 7-Eleven on Atlantic Avenue, when the

911 dispatcher informed them that a silver Toyota Scion had been pulled over, and Frank said

that there was no longer a car following her.  ECF 45-2.  The depositions of Kennedy and Pereira

indicate that they arrived at the scene of the incident in response to a radio call.  ECF 45-6, 45-7.

The Freeport Police Department's case report states that the police pulled over a Toyota Scion at

11:03 pm at the intersection of Archer Street and Ocean Avenue in Freeport, and that the

Plaintiff was released from custody around 1:30 am.  ECF 45-3 at 1–2, 33.  That report also

contains signed statements from Kennedy, Pereira, and McGovern that they were radio assigned

to the area of the incident because of a 911 caller's claim that a Toyota Scion, or a grey

automobile, was following her.  *Id.* at 1, 9, 11.

In opposition, the Plaintiff argues that there is no evidence that the car the officers pulled over was following another vehicle; thus, there was no reasonable suspicion for stopping the vehicle.  ECF 61-1 at 9.  He further argues that police had no probable cause for detaining him because the police officers did not observe the Scion to be driving erratically, breaking traffic laws or pursuing Frank's vehicle, and they did not ultimately find weapons in the car.  *Id.* at 9–10.  He also claims that the facts leading up to his detention are in dispute.  *Id.*

The Plaintiff also relies on Kennedy's deposition and the arrest report from the incident, ECF 61-15, and notes that Kennedy testified that Freeport Police officers received a radio call about a vehicle that had been chasing another vehicle and causing the vehicle damage, but he did not personally see the Plaintiff chasing a car.  *Id.* at 30, 32.

In reply, the Defendants reiterate their argument that the police pulled the Scion over in the same location where the Plaintiff noticed she was no longer being followed.  ECF 62 at 3–4.

As an initial matter, the vehicle and its occupants were detained from the moment the police pulled the vehicle over to the moment they allowed the vehicle and its inhabitants to leave.  Based on this, the Court need not consider whether the police had reasonable suspicion to stop the vehicle, pursuant to *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).  Because the police detained all of the vehicle's inhabitants, the Plaintiff included, for the entirety of the incident, the only relevant inquiry is whether the police had probable cause for pulling the vehicle over.  *See United States v. Dalmau*, No. 14-CR-165A, 2016 WL 5919836, at *5 (W.D.N.Y. Oct. 11, 2016) (Scott, M.J.), *adopted by*, 2016 WL 7117250 (W.D.N.Y. Dec. 7, 2016). ("Because the officers took Dalmau into custody immediately upon executing the traffic stop, this case does not present the type of scenario in which a lower level of seizure like a *Terry*

stop led to additional information that subsequently justified a full arrest.  The officers thus needed probable cause to stop the GMC Yukon.").

The evidence reflects that the police responded to a radio call and were sent to an area in Freeport in which Frank reported she was being pursued by another car, a Toyota Scion.  ECF 45-3.  The police arrived at the area and pulled over a car matching the description from the radio call.  *Id.*

Frank's 911 call, the information contemporaneously conveyed to the police, and the Scion's being present at the time and location of the reported chase is sufficient for a finding of probable cause.  *See Bobolakis v. DiPietrantonio*, 523 F. App'x 85, 87 (2d Cir. 2013) (summary order) (affirming a finding of probable cause for a DUI arrest where, *inter alia*, "[t]wo separate drivers called 911 to report that Bobolakis was driving erratically on the highway, describing him as swerving in and out of his lane" and the "second 911 caller followed Bobolakis as he exited the highway to assist the dispatcher in sending police vehicles to respond"); *see also Caldarola v. Calabrese*, 298 F.3d 156, 163 (2d Cir. 2002) ("'[I]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, who it seems reasonable to believe is telling the truth.'") (quoting *Miloslavsky v. AES Eng'g Soc'y*, 808 F. Supp. 351, 355 (S.D.N.Y. 1992), *aff'd* 993 F.2d 1534 (2d Cir. 1993)); *Dalmau*, 2016 WL 5919836, at *5 ("[P]robable cause to stop a vehicle and to arrest its occupants can rest on 911 calls and witness statements describing a vehicle and placing it at the scene of a crime that just recently occurred.") (citing *United States v. Harple*, 202 F.3d 194, 198 (3d Cir. 1999)).

A critical issue in this case is whether probable cause to detain had dissipated between the time of the vehicle's stop and the time of the Plaintiff's being placed in handcuffs, *i.e.*,

whether the detention and the handcuffing generate two different inquiries.  A corollary to the general rule that police may rely on a totality of the circumstances at the time of an arrest to establish probable cause is that "officers 'may not disregard facts tending to dissipate probable cause' when directly confronted with such facts before an arrest is made.'"  *United States v. Pabon*, 871 F.3d 164, 175 (2d Cir. 2017) (quoting *Bigford v. Taylor*, 834 F.3d 1213, 1218 (5th Cr. 1988)).  In addition, an officer cannot disregard exculpatory evidence.  *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006).

While the police ultimately found no weapons in the car, which is the strongest bit of exculpatory evidence alleged by the Plaintiff, there is nothing to suggest in the parties' Rule 56.1 statements that the officers had any time to observe, let alone disregard, the absence of weapons in the short interval between stopping the vehicle and the Plaintiff's exiting the vehicle.  *See Lowth v. Town of Cheektowaga*, 82 F.3d 563, 671 (2d Cir. 1996) ("In order for probable cause to dissipate, the groundless nature of the charges must be made apparent by the discovery of some intervening fact."); *Castro v. Cty. of Nassau*, 739 F. Supp. 2d 153, 169 (E.D.N.Y. 2010).

That the police ultimately found no weapons has no bearing on their having probable cause to arrest the Plaintiff at the time of the incident.  *See James*, 2008 WL 11414567, at *7. The only event that caused probable cause to dissipate, Frank's decision not to bring charges, did not precede the police's having probable cause to pull over the vehicle at the time of the incident. Accordingly, the Defendants' motion is granted with regard to the false arrest claim.

### E.  Excessive Force Claim

At issue are two alleged instances of excessive force, by Defendants Kennedy and Pereira: (1) the Plaintiff's removal from the vehicle and restraint while his wrists were tied; and (2) when the officers refused the Plaintiff a coat, even though it was cold outside, while he sat inside

Kennedy's car with the windows down.  The Court denies the motion with regard to the first instance of force, and grants it with regard to the second.

"The Fourth Amendment protects individuals from the government's use of excessive force when detaining or arresting individuals."  *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006).  A police officer's use of force is excessive in violation of the Fourth Amendment "if it is objectively unreasonable 'in light of the facts and circumstances confronting [him] without regard to [his] underlying intent or motivation.'"  *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) (quoting *Graham*, 490 U.S. at 397, 109 S. Ct. 1865).  In this regard, although "[t]he fact that a person whom a police officer attempts to arrests resists, threatens, or assaults the officer no doubt justifies the officer's use of some degree of force, [] it does not give the officer license to use force without limit."  *Sullivan v. Gagnier*, 225 F.3d 161, 165–66 (2d Cir. 2000).  Rather, "[t]he force used by the officer must be reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer."  *Id.* at 166.  However, "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.'"  *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) (quoting *Graham*, 490 U.S. at 397, 109 S. Ct. 1865)).

Officers may use reasonable force to effect an arrest.  *See, e.g.*, *Kalfus v. N.Y. & Presbyterian Hosp.*, 476 F. App'x 877, 881 (2d Cir. 2012) (summary order) (officers' actions were reasonable where "officers turned Kalfus onto his stomach, pulled his arms behind his back, placed handcuffs on him, and lifted him onto his feet by pulling on his upper arms, sweatshirt, and waist.").  "Because the Fourth Amendment test of reasonableness is one of objective reasonableness, the inquiry is necessarily case and fact specific and requires balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the

countervailing governmental interests at stake." *Tracey*, 623 F.3d at 96 (citations and internal quotation marks and brackets omitted); *see also Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015).  In deciding whether an officer used excessive force, courts consider "(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight."  *Tracey*, 623 F.3d at 96 (citing *Graham*, 490 U.S. at 396, 109 S. Ct. 1865; *Jones*, 465 F.3d at 61); *see Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999).

"The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."  *O'Bert v. Vargo*, 331 F.3d 29, 36 (2d Cir. 2003) (internal quotation marks omitted).  In judging an officer's actions, a court must not substitute its own viewpoint.  Rather, courts "must judge the officer's actions 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'"  *Jones*, 465 F. 3d at 61 (quoting *Graham*, 490 U.S. at 396, 109 S. Ct. 1865).

At the summary judgment stage, because of the "fact-specific nature" of the objective reasonableness inquiry, "granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable."  *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 123 (2d Cir. 2004).  Thus, to prevail on a motion for summary judgment, the evidence must show that "no rational jury could have found that the force used was so excessive that no reasonable officer would have made the same choice."  *Lennon v. Miller*, 66 F.3d 416, 426 (2d Cir. 1995).

25

The Defendants argue that their use of force was objectively reasonable.  ECF 45 at 1, ECF 46.  They allege that shortly after police stopped the vehicle, the Plaintiff, "without prompting by a Police Officer," exited the car.  ECF 46 at 13.  They further allege that the Kennedy told the Plaintiff to sit, and that when Defendant Pereira arrived shortly afterwards, the Plaintiff was "screaming profanities."  *Id.* at 13–14.  They also allege that the Plaintiff said his identification was in his jacket; that Defendant Kennedy was handing the Plaintiff his jacket when non-defendant McGowan asked Defendant Kennedy if he had checked the jacket for weapons; that Defendant Kennedy and the Plaintiff fought over the jacket; and then McGovern and Defendant Pereira handcuffed the Plaintiff.  *Id.* at 14–15.  They further allege that the police escorted the Plaintiff to the backseat of a police car, where he spent the next hour-and-a-half indoors, and not, as the Plaintiff alleged, out in the cold.  *Id.* at 16; ECF 44 at 6.  They rely on the deposition testimony of Defendants Kennedy and Pereira, as well as that of McGowan.  ECF 45-6, 45-7, 45-9

The Defendants also argue that the Court should dismiss the Plaintiff's claims of excessive force because the record is "devoid" of any injury suffered by the Plaintiff, either from being thrown to the ground and his wrists bound or from his time sitting in the cold.  ECF 44 at 8.  They submit in support the Plaintiff's medical records from the day after the incident, as well as follow-up visits, arguing that while the Plaintiff claimed to have received a prescription for muscular injuries, no prescription was ever written.  *Id.*; ECF 43-10, 43-11, 43-12.

The Plaintiff alleges that an officer asked all of the vehicle's occupants for their identification immediately upon approaching the vehicle.  ECF 61-1 at 14.  Upon asking the officer why he was being so aggressive, a different officer, Kennedy, then told the Plaintiff to exit the vehicle.  *Id.*  He alleges that he was forcibly dragged from the rear passenger seat of the

vehicle; despite not resisting arrest; thrown to the ground while an officer sat on his back and two officers twisted his body and pushed him into the ground; placed in the back seat of a police car without his jacket. *Id.* at 14–15.  The Plaintiff submits in support video taken from Kiyonte Carter's phone, in which the Plaintiff is seen screaming about his knee and yelling that he is not resisting, while his companions from the car say the same. *Id.* at 16.

He also alleges that he did sustain injuries, namely to his back; that doctors prescribed medicine and a home exercise routine; that he visited a doctor, Nicholas Harper, a few months later after a "flare up" in pain, and Dr. Harper recommended physical therapy at Park Slope Medicine, P.C.; and that the Plaintiff could not attend physical therapy sessions because of work and school commitments. *Id.* at 18–19.  He submits an affidavit in which he made sworn statements that his doctor prescribed him Motrin and Flexeril, and that he continues to have pain in his back and his thighs from the night of the incident.  ECF 61-13.  He also submits records from his visit to South Nassau Communities Hospital on January 16, 2015, which show his receiving prescriptions of ibuprofen and cyclobenzaprine.  ECF 61-9 at 10.

In addition, the Plaintiff purports to have been injured psychologically as a result of the incident, and he relies on Smith's affidavit ECF 61-1 at 17, 18.  Smith's affidavit contains sworn statements that: she met with the Plaintiff four times over two years to evaluate him; he consistently presented as being emotionally traumatized by the incident; and that his feelings are the direct result the trauma from the incident.  ECF 61-11.

In reply, the Defendants again assert that the Plaintiff's opposition refers to mislabeled exhibits with regard to the excessive force claim.  Specifically, they claim that the Plaintiff, for the second time in this summary judgment motion practice, has cited to materials from Dr. Harper but the corresponding exhibit is from the Plaintiff's NY Gen. Mun. L. § 50h hearing,

which does not discuss any treatment with Dr. Harper.  ECF 62 at 5.  The Defendants also note that the allegation about the home exercise program does not appear in the Plaintiff's Rule 56.1 counterstatement, and that accordingly, the Court should disregard it.  *Id.* at 6.  They also reiterate their argument about the absence of an injury to the Plaintiff in the record.

The Plaintiff's failure to properly cite Dr. Harper's findings precludes a finding in the Plaintiff's favor as to his injuries.  As to the excessive force claim as a whole, however, the Court denies the motion for summary judgment.  The parties present diverging accounts of what transpired during the incident following the vehicle stop.  At the crux of their dispute is whether the Plaintiff voluntarily exited the vehicle or whether the police forcefully removed him.  Viewing the facts in the light most favorable to the Plaintiff, the Court rules that he has raised a genuine issue of fact as the first alleged instance of excessive force.  *See Amnesty Am.*, 361 F.3d at 123–24 (2d Cir. 2004) (commenting that "allegations that police yanked arrestee out of a car, threw her against it, and pinned her arm behind her back were sufficient to withstand summary judgment"; *Lozada v. Weilminster*, 92 F. Supp. 3d 76, 93 (E.D.N.Y. 2015) ("A reasonable jury could find that no force [in removing plaintiff from a car] was warranted, and that forcibly removing Plaintiff from her car and handcuffing her was excessive force.").

The *Lozada* holding is particularly useful to the Plaintiff's case, in that the plaintiff alleged that police forcibly removed her from a vehicle, despite her not resisting arrest, and that following her arrest, she visited the hospital and complained of bruising.  92 F. Supp. 3d at 93.  Like the *Lozada* plaintiff, the Plaintiff here complained of ongoing back pain from the incident, and he submits hospital records and an affidavit in support.  His records show complaints of back pain radiating to his left leg and his being prescribed medication.  ECF 61-9 at 10; *see Haynes v. N.Y.C. Police Dep't*, 212 F. App'x 60, 62 (2d Cir. 2007) (summary order) ("[W]e have permitted

claims to survive summary judgment where the only injury alleged is bruising.").  In addition, the Plaintiff has alleged psychological injuries from the night of the incident, injuries to which the Defendants raise no substantive argument.  It is "well-established that psychological injuries may be a compensable component of excessive force cases." *Barcomb v. Kraeger*, No. 14-CV-1159 (JBA), 2016 WL 2644885, at *5 (D. Conn. May 5, 2016) (internal quotation marks omitted); *Frego*, 2015 WL 4728922, at *9; *Fifield v. Barrancotta*, 545 F. Supp. 2d 307, 311 (W.D.N.Y. 2008).  Notwithstanding the citation error, the excessive force claim survives as to the first alleged instance of force.

However, the Plaintiff does not allege any injuries directly stemming from being left exposed to cold weather.  *See Johnson v. City of New York*, No. 09-Civ.-4685 (PGG), 2011 WL 1044852, at *8 (S.D.N.Y. Mar. 18, 2011) (granting motion for summary judgment on excessive force claim based on exposure to cold temperatures because 40-minutes of exposure to cold did not meet cruel and unusual punishment standard of the 14th Amendment); *Johnson ex rel. Johnson v. Cty. of Nassau*, No. 09-CV-4746 (JS) (MLO), 2010 WL 3852032, at *3 (E.D.N.Y. Sept. 27, 2010) ("In addition, Plaintiff can obtain no relief for purely psychological injuries, even if Plaintiff establishes proximate cause."); *Russo v. Port. Auth.*, No. 06-CV-6389 (RRM) (CLP), 2008 WL 4508558, at *5 (E.D.N.Y. Sept. 30, 2008).

### F.  Assault and Battery Claims

Excessive force claims and state law assault and battery claims brought against police officers are nearly identical.  *See Humphrey v. Landers*, 344 F. App'x 686, 688 (2d Cir. 2009) (summary order) ("[E]xcept for § 1983's requirement that the tort be committed under color of state law, the essential elements of [excessive force and assault and battery claims are] substantially identical.") (internal quotation marks omitted); *Graham v. City of New York*, 928 F.

Supp. 2d 610, 624 (E.D.N.Y. 2013).  Courts thus analyze the claims under a parallel Fourth

Amendment standard.  *See John v. City of New York*, 406 F. Supp. 3d 240, 244 (E.D.N.Y. 2017).

The sum and substance of the Defendants' motion with regard to the assault and battery

claim is that, because the Court should dismiss the excessive force claim, the Court must also

dismiss the claim for assault and battery.  ECF 44 at 8.  As noted above, the Court is allowing

one of the excessive force claims to proceed.  The Court thus rules the same way with regard to

assault and battery.  To the extent that the Plaintiff raises a claim for assault and battery based on

being forcibly removed from the vehicle, the Court denies the summary judgment motion.  To

the extent that the Plaintiff raises the same claim based on exposure to the cold, the Court grants

the summary judgment motion.

### G.  Negligence Claim

Courts in this Circuit have repeatedly held that, under New York law, "a plaintiff may not

recover under general negligence principles for a claim that law enforcement officers failed to

exercise the appropriate degree of care in effecting an arrest."  *Bernard*, 25 F.3d at 102 (2d Cir.

1994); *Harley v. the City of New York*, No. 14-CV-5452 (PKC), 2016 WL 552477, at *2

(E.D.N.Y. Feb. 10, 2016); *McSween v. Edwards*, 91 F. Supp. 2d 513, 525 (E.D.N.Y. 2000)

("New York law prohibits recovery under a general theory of negligence when the traditional

remedies of false arrest and imprisonment are available.") (internal quotation marks omitted).

This results in a barring of negligence claims against officers and municipalities.  *Bernard*, 25

F.3d at 98 (citing *Boose v. City of Rochester*, 71 A.D.2d 59, 421 N.Y.S.2d 740, 744 (2d Dep't

1979)).

The Defendants move for summary judgment as to the negligence claim based on this

doctrine.  ECF 44 at 10.  The Plaintiff alleges generally that the Defendants are negligent, and

that the Village of Freeport negligently trained, supervised, and retained its employees, making them liable for the officers' negligence under a theory of *respondeat superior*.[1]  ECF 61-1 at 21, 26.  The Defendants raise no argument as to negligence in their reply.

To prevail on a claim of negligent training, supervision, or retention of police officers, a plaintiff must show that "a municipality's failure to properly train, hire, retain, or supervise 'its police officers in a relevant respect evidences a deliberate indifference to the rights of its inhabitants.'"  *Henry-Lee v. City of New York* 746 F. Supp. 2d 546, 566 (E.D.N.Y. 2010) (quoting *Jackson v. City of New York*, 192 A.D.2d 641, 596 N.Y.S.2d 457, 458 (2d Dep't 1993)); *see also City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989) (ruling inadequacy of police training my serve as the basis for § 1983 liability only where that failure to train amounts to deliberate indifference to the rights of persons with whom the police come in contact).  The Plaintiff bears the burden of presenting evidence to the training, hiring, retention or supervision policies of the municipality.  *Jackson*, 939 F. Supp. 2d at 234.

The *respondeat superior* argument is unavailing and insufficient to survive summary judgment.  "[A]n employer may generally be liable for an employee's negligence where the employee is acting within the scope of his or her employment" under a *respondeat theory*. *Nesheiwat v. City of Poughkeepsie*, No. 11-CV-7072 (ER), 2013 WL 620267, at *2 (S.D.N.Y. Feb. 13, 2013).  Regardless, no claim may proceed for negligent hiring, retention, supervision, or training on that basis alone.  *Case v. Anderson*, No. 16-Civ.-983 (NSR), 2017 WL 3701863, at *25 (S.D.N.Y. Aug. 25, 2017).

The Plaintiff's remaining allegations of negligent training do not go beyond conclusory allegations about the Village of Freeport.  Such allegations are inadequate to survive a motion for

---

[1] Although this argument overlaps with the Plaintiff's municipal liability claim, the Court addresses them in separate sections.

summary judgment. *F.D.I.C.*, 607 F.3d at 292. The Court thus grants the summary judgment

motion as to the negligence claim.

### H.  Municipal Liability Claim

A municipal body may not bear § 1983 liability for unconstitutional acts of its employees

absent allegations that are attributable to a municipal custom, policy, or practice. *Monell v.

N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); *see

Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000) (holding that a municipality "cannot properly be

held liable . . . unless the injury was inflicted by [its] lawmakers or by those whose edicts or acts

may fairly be said to represent official policy."), *cert. denied sub nom.*, 531 U.S. 813, 121 S. Ct.

47 (2000). In addition, for municipalities, vicarious liability or *respondeat superior* "will not

attach under § 1983." *Reynolds v. Giuliani*, 506 F.3d 183, 191 (2d Cir. 2007).

> To satisfy the policy or custom requirement, a plaintiff may allege the existence of:
>
> (1) a formal policy officially endorsed by the municipality; (2) actions taken by
> government officials responsible for establishing the municipal policies that caused
> the particular deprivation in question; (3) a practice so consistent and widespread
> that, although not expressly authorized, constitutes a custom or usage of which a
> supervising policy-maker must have been aware; or (4) a failure by policy makers
> to provide adequate training or supervision to subordinates to such an extent that it
> amounts to deliberate indifference to the rights of those who come into contact
> with the municipal employees.

*Jones v. Bay Shore Union Free Sch. Dist.*, 170 F. Supp. 3d 420, 438 (E.D.N.Y. 2016); *see Davis

v. City of New York*, 959 F. Supp. 2d 324, 338 (S.D.N.Y. 2013). A policy or practice may be

informal, "so long as the discriminatory practices are persistent and widespread so as to

constitute a custom or usage with the force of law." *Lovell v. Comsewogue Sch. Dist.*, 214 F.

Supp. 2d 319, 324 (S.D.N.Y. 2002) (internal quotation marks omitted). Concurrently, a "'single

incident involving an employee below the policymaking level will not suffice to support an

inference of municipal custom or policy.'"  *Brewster v. Nassau Cty.*, 349 F. Supp. 2d 540, 549 (E.D.N.Y. 2004) (quoting *Vann v. City of New York*, 72 F.3d 1040, 1050 (2d Cir. 1995)).

Here, the Defendants assert that the complaint does not contain specific factual allegations that would support a *Monell* policy or custom argument.  ECF 44 at 11.  They also claim that the Plaintiff's experience with the individual officers may not amount to a policy or custom on behalf of the Village of Freeport, because those officers are not policymakers.  *Id.* at 11–12.

The Plaintiff raises no specific arguments as to *Monell*, other than the negligent training argument that the Court addressed in the previous subsection.  The Court has already granted the summary judgment with regard to negligence.  To the extent that the Plaintiff raises a separate *Monell* claim, the Court deems that claim abandoned.  The Court issues the same ruling with regard to the § 1988 willful blindness claim, which does not appear in the opposition, and a noted below, is raised against an improper defendant.  *See, e.g.*, *Williams v. Suffolk Cty.*, 284 F. Supp. 3d 275, 284 (E.D.N.Y. 2018).  In addition, the Court dismisses the action as to the Village of Freeport, as none of the Plaintiff's surviving claims pertain to it.

### I.  Qualified Immunity

An individual officer may avail himself of qualified immunity, and thereby avoid liability for civil damages, if he demonstrates that his conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Kisela v. Hughes*, 138 S. Ct. 1148, 1152, 200 L. Ed. 2d 449 (2018) (per curiam) (internal quotation marks omitted); *see Lennox v. Miller*, 968 F.3d 150, 155 (2d Cir. 2020).  Qualified immunity is an affirmative defense, and a defendant officer bears the burden of proof in establishing it.  *Vincent v. Yelich*, 718 F.3d 157, 166 (2d Cir. 2013).

Two steps guide the qualified immunity analysis.  The first step is "whether the plaintiff established that his constitutional rights were violated."  *Bacon v. Phelps*, 961 F.3d 533, 542 (2d Cir. 2020).  The second step pertains to "whether the right at issue was 'clearly established' at the time of the alleged violation."  *Id.* (citing *Pearson v. Callahan*, 555 .S. Ct. 223, 232, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)).

With regard to excessive force, and implicitly assault and battery at the summary judgment stage, Courts deny officers qualified immunity where, based on factual disputes, they cannot say as a matter of law that the amount of force used in a particular case was objectively reasonable.  *Lennox*, 968 F.3d at 155–56; *Breitkopf v. Gentile*, 41 F. Supp. 3d 220, 250 (E.D.N.Y. 2014).  Courts reason that the question of objective reasonability "cannot be determined until [the] factual disputes are resolved."  *Breitkopf*, 41 F. Supp. 3d at 250 (citing *Benson v. Yaeger*, No. 05-CV-784, 2009 WL 1584324, at *7 (W.D.N.Y. June 3, 2009) ("[T]he only issue is whether the Officers' conduct was objectively reasonable—the very question upon which this Court has found there are genuine issues of material fact.")).

This reasoning prevents the Court from granting Kennedy and Pereira qualified immunity here.  The parties dispute much of the incident, including the events leading to the Plaintiff's exit from the car.  That includes the entirety of the facts surrounding the Plaintiff's surviving claims.  To rule on which of the two parties' accounts is more credible would be improper at this stage of the litigation.  *See, e.g.*, *Soto v. Gaudett*, 862 F.3d 148, 155 (2d Cir. 2017).

**J.   Claims against the Village of Freeport Police Department**

The Defendants assert that the Village of Freeport Police Department is not a proper defendant in this case.  They argue that, as a government agency, it is not a suable entity.  ECF 41 at 21.

The Court agrees.  Under New York law, "departments which are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and therefore, cannot sue or be sued."  *Harris v. Nassau Cty.*, No. 13-CV-4728 (NGG) (ST), 2016 WL 3023265, at *5 (E.D.N.Y. May 23, 2016) (dismissing claims against NCPD); *Pooler v. Hempstead Police Dep't*, 897 F. Supp. 2d 12, 21 (E.D.N.Y. 2012) (holding that the Hempstead Police Department was an "administrative arm" of the Village of Hempstead); *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002) (dismissing claims against Lynbrook Police Department).

The Plaintiff cannot maintain an action against the Village of Freeport's Police Department.  The Village of Freeport's Police Department does not have a legal entity separate and apart from its municipality.  *See Pooler*, 897 F. Supp. 2d at 21; *Davis*, 224 F. Supp. 2d at 477; *see also Burris v. Nassau Cty. Dist. Attorney*, No. 14-CV-5540 (JFB) (GRB), 2017 WL 9485714, at *4–5 (E.D.N.Y. Jan. 12, 2017) (Brown, M.J.), *adopted by*, 2017 WL 1187709 (E.D.N.Y. Mar. 29, 2017). The action is thus dismissed as to the Village of Freeport Police Department.

**III.   CONCLUSION**

For the foregoing reasons, the Court grants the Defendants' Rule 56 motion in part and denies it in part.  The Court grants the motion as to the Plaintiff's claims for false arrest,

excessive force concerning exposure to cold weather, negligence, and municipal liability.  It denies the motion with regard to the excessive force clam surrounding the Plaintiff's removal from the car, and the assault and battery claim.  In addition, the Court holds that the Defendant officers are not entitled to qualified immunity.  Further, the Court dismisses the action as to Defendants the Village of Freeport and the Village of Freeport Police Department.  The Clerk of the Court is respectfully directed to amend the caption in accordance with this order.

The Court further authorizes the parties to reopen discovery for the limited purpose of deposing Smith.  The Court orders the parties to confer and agree on a date for the deposition. The parties must submit a deposition schedule within thirty (30) days of the entry of this Order. If no agreement can be reached by that time the Defendants may subpoena Smith for a deposition.  Finally, the telephone status conference scheduled for November 18, 2020 is adjourned to **January 14, 2021, at 11:00 a.m.**  At that time, the parties are directed to call the teleconferencing number (877) 336-1280 and follow the automated instructions; the access code is 7215690.

It is **SO ORDERED.**

/s/ *Sandra J. Feuerstein*

Sandra J. Feuerstein
United States District Judge

Dated: Central Islip, New York
October 30, 2020