UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
TIMOTHY HARRISON,

Plaintiff,                      MEMORANDUM, DECISION and
                               ORDER AFTER BENCH TRIAL
     -against-                 16-CV-2442 (JS)(AYS)

POLICE OFFICER VINCENT KENNEDY,
BADGE NUMBER 110; POLICE OFFICER
FREDDY PEREIRA, BADGE NUMBER 180,
*Individually and as Police
Officers*,

Defendants.
--------------------------------X

APPEARANCES
For Plaintiff:        Violet Elizabeth Samuels, Esq.
                      Samuels & Associates, P.C.
                      135-13 Hook Creek Boulevard
                      Rosedale, New York 11422

For Defendants:       Andrew Kenneth Preston, Esq.
                      Bee Ready Fishbein Hatter & Donovan, LLP
                      170 Old Country Road, Suite 200
                      Mineola, New York 11501


SEYBERT, District Judge:

        Plaintiff Timothy Harrison ("Plaintiff") commenced this

Section 1983 action, pursuant to 18 U.S.C. § 1983 ("§ 1983"),

seeking monetary damages against the Town of Hempstead, the

Incorporated Village of Freeport, the Village of Freeport Police

Department (together, the "Municipal Defendants"),[1] and Police

---

[1] The Municipal Defendants have been dismissed from this case.
(See Dismissal Order, ECF No. 17; see also Mem. & Order, ECF No.
68 (hereafter, the "October 2020 Memo & Order").)

Officers Vincent Kennedy and Freddy Pereira (collectively, "Officers" or "Defendants"), in their individual and official capacities, alleging, _inter alia_: (1) the Officers used excessive force in effectuating Plaintiff's January 16, 2015 arrest, in violation of the Fourth Amendment; and (2) the Officers committed assault and battery against Plaintiff.[2]  (Compl., ECF No. 1-1; _see also_ Pl's Proposed Findings of Fact ("FOF"), ECF No. 97; Defs' Proposed FOF, ECF No. 98.)  A bench trial on these remaining claims was held before the undersigned on December 19, 2023.  (_See_ Min. Entry, ECF No. 92.)  Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure (the "Rules"), the Court now issues its findings of fact and conclusions of law.[3]  After considering the evidence offered at trial and the controlling law on the issues presented, the Court finds in favor of Defendants.

---

[2] On October 30, 2020, then-presiding judge Honorable Sandra J. Feuerstein dismissed all claims in this action except the excessive force claim and the assault and battery claims related to excessive force.  (_See_ October 2020 Memo & Order at 35-36.)  This case was reassigned to the undersigned on June 2, 2021.

[3] At the conclusion of Plaintiff's case-in-chief, Defendants moved for judgment as a matter of law pursuant to Rule 52(c) (the "Rule 52(c) Motion").  (Tr. 187:19-188:1.)  However, "at this stage of the case, Rule 52(c) implies the same inquiry the Court makes to resolve all of the legal and factual matters under Rule 52(a)."  _Wechsler v. Hunt Health Sys., Ltd._, 330 F. Supp. 2d 383, 433 (S.D.N.Y. 2004) ("The Court's task [in resolving a Rule 52(c) motion] is to weigh the evidence resolve any conflicts in it, and decide for itself where the preponderance lies") (internal citations and quotation marks omitted).  Since the Court issues these findings of fact and conclusions of law pursuant to Rule 52(a), the Court finds Plaintiff's Rule 52(c) Motion is moot.

<u>FINDINGS OF FACT</u>

Based on the evidence presented, the Court makes the following findings of fact pursuant to Rule 52(a).[4] These findings of fact are drawn from the trial testimony ("Tr."), and the parties' trial exhibits (labeled "Pl's Ex." for Plaintiff's exhibits, and "Defs' Ex." for Defendants' exhibits).

On January 15, 2015, Officer Kennedy responded to a 911 call from a frantic woman stating she was being chased by a group of men in a grey Toyota Scion (the "Vehicle"), some of whom caused damage to her car while she was stopped at a red light. (Tr. 39:22-40:5; Defs' Exs. B (the "911 call"), C (the "Freeport Police Department Case Report").) Officer Kennedy was informed via radio transmission that the men may have been armed with a knife. (Tr. 40:4-5; <u>see also</u> Defs' Ex. B (victim stating her belief that the assailants were armed with a weapon).) At or around the same time, Officer Pereira responded to a radio transmission from Officer Kennedy describing the situation. (Tr. 48:6-16.) A third officer, Officer Curtis, identified a vehicle matching the description provided in the 911 call and pulled it over. (Tr. 19:6-23; 22:10-15.) Officer Kennedy arrived on scene at or around the same time

---

[4] To the extent any of the findings of fact may be deemed conclusions of law, they shall also be considered conclusions. Likewise, to the extent any of the conclusions of law may be deemed findings of fact, they shall be considered findings. <u>See</u> <u>Miller v. Fenton</u>, 474 U.S. 104, 113-14 (1985) (noting the difficulty, at times, of distinguishing findings of fact from conclusions of law).

the Vehicle was pulled over by Officer Curtis.   (Tr. 22:13-22; 41:4-11.)

Upon his arriving at the scene, Officer Kennedy approached the Vehicle and found Plaintiff in the rear passenger seat.  (Tr. 22:20-22:22; 23:23-24:1.)   Plaintiff then attempted to exit the Vehicle, notwithstanding he was not given permission to do so, stating he wanted to go to his aunt's nearby home.   (Tr. 25:11-16; 26:3-27:2.)   Officer Kennedy instructed Plaintiff to remain in the Vehicle, and closed the rear passenger seat door. (Tr. 26:18-24.)   Eventually, Plaintiff again tried to exit the Vehicle, and was successful; Officer Kennedy then instructed Plaintiff to sit on the curb.[5]   (Tr. 27:3-4.)   While sitting on

---

[5] Plaintiff testified he did not exit the Vehicle on his own volition, but rather, was forcibly removed from the Vehicle by Officer Pereira.  (Tr. 74:20-25.)  The Court finds this portion of Plaintiff's testimony to be incredible and instead credits Officer Kennedy and Officer Pereira's accounts of the events leading up to Plaintiff's detention.   See Gunter v. Long Island Power Auth./Keyspan, No. 08-CV-498, 2018 WL 10456421, at *5 (E.D.N.Y. Apr. 3, 2018) ("As the finder of fact [in this bench trial], the Court is entitled to assess the credibility of the witnesses and testimony."); see also Starr Indem. & Liab. Co. v. Water Quality Ins. Syndicate, 775 F. App'x 4, 5 (2d Cir. 2019) ("As trier of fact, the district court is entitled to believe some parts and disbelieve other parts of the testimony of any given witness.") (internal quotation marks omitted).

The Court makes such findings for several reasons.  First, Plaintiff's trial testimony concerning who purportedly pulled him out of the Vehicle is inconsistent with his prior deposition testimony.  (Compare Tr. 74:20-25 (Plaintiff testifying Officer Pereira pulled him out of the Vehicle by force, with, Tr. 107:5-109:9 (Plaintiff confronted with prior deposition testimony that Officer Kennedy pulled him out of the Vehicle.)  Second, the Court

the curb, Plaintiff: repeated he wanted to leave the scene to go to his aunt's house; stated his belief that the police could not hold him; and further stated he planned to sue the police department to make a "quick ten thousand" dollars. (Tr. 49:14-24.) At or around this time, Officer Pereira arrived at the scene. (Tr. 48:2-21.)

Plaintiff then asked the Officer Kennedy for his jacket. (Tr. 44:6-11; 50:12-15.) Officer Kennedy retrieved Plaintiff's jacket from the Vehicle and began handing it to Plaintiff, at which time, the police sergeant on scene, Sergeant McGovern, asked Officer Kennedy if he thoroughly searched the jacket for weapons. (Tr. 44:12-17; 50:24-51:7.) Upon realizing he had not thoroughly searched the jacket, Officer Kennedy and the other responding officers grew concerned that Plaintiff's jacket may have contained

_____

credits Officer Pereira's testimony that he did not arrive on the scene until after Plaintiff exited the Vehicle. (Tr. 48:19-21 (Officer Pereira stating, upon arrival at the scene, Plaintiff was sitting on the curb).) It logically follows that Officer Pereira could not have pulled Plaintiff out of the Vehicle because he had yet to arrive on the scene when Plaintiff exited the Vehicle. Third, Officer Kennedy credibly testified that Plaintiff left the Vehicle on his own accord while stating his intent to leave to go to his aunt's house. (Tr. 26:5-27:4.) This testimony is further corroborated by the Freeport Police Department Case Report. (Def's Ex. C, at 1-2 ("Timothy Harrison (CRIP gang member) stated 'I'm getting the fuck outta here and going to my aunt's crib'. Mr. Harrison then got out of the vehicle. The individual was then instructed to sit on the curb while the car stop was being conducted.").) Accordingly, the Court declines to credit Plaintiff's testimony that he was forcibly removed from the Vehicle, and finds, to the contrary, that Plaintiff exited the Vehicle on his own accord.

a weapon; consequently, Officer Kennedy began to pull the jacket back and away from Plaintiff.  (Tr. 45:3-8; 51:1-20; see also Tr. 65:4-16 (Officer Pereira testifying he was "worried that there could be a weapon in [the] jacket, and [Plaintiff] could have hurt [him] and [his] coworkers and[/or] the occupants of the vehicle.").)   Plaintiff then partially sat up, lunged toward Officer Kennedy, and tried to grab the jacket; a struggle between Plaintiff and either Officer Kennedy or Sergeant McGovern ensued. (Tr. 44:16-19; 44:22-45:8; 52:17-54:7.)   Plaintiff was then forcibly placed on his stomach and handcuffed.  (Tr. 51:1-56:1.) To effectuate the handcuffing, Sergeant McGovern grabbed Plaintiff's left hand and turned Plaintiff toward the ground such that Plaintiff was laying on his stomach; Officer Pereira held Plaintiff down by placing his knee into Plaintiff's back so that handcuffs could be affixed to Plaintiff's wrists.  (Tr. 55:12-56:7; Pl's Ex. 10 (video footage showing an officer's knee in Plaintiff's back).)  Upon affixing Plaintiff's handcuffs, Officer Pereira immediately removed his knee from Plaintiff's back, and Plaintiff was brought to his feet.[6]  (Pl's Ex. 10.)

---

[6]  Plaintiff's testimony suggests Plaintiff was less-than-cooperative during his handcuffing, and, at times, combative. Indeed, Plaintiff testified that, upon being asked to get on the ground, he did not do so.  (Tr. 112:15-18.)  Plaintiff further testified that, once he was forced onto the ground, Officers had to assist Officer Pereira in "keeping him down" and handcuffs were "aggressive[ly]" affixed to his wrists as an attempt to "control [him] to calm [him] down."  (Tr. 77:1-15.)

Plaintiff was then escorted to Officer Kennedy's police car so the Officers could continue their investigation and confirm whether the victim wanted to press charges.  (Tr. 30:6-20; 30:24-31:2; 55:12-56:11.)  For the majority of the time that Plaintiff was in the police car, Officer Kennedy was in the car with him.  (Tr. 32:9-11.)  Once the investigation was complete, Plaintiff was released.  (Tr. 33:22-34:7.)  Upon having his handcuffs removed, Plaintiff was given a "79 form" (the "79 Form") and asked several questions, including whether he: was in good health; needed an ambulance; or was under the influence of drugs or alcohol.  (Tr. 34:16-35:9.)  On the 79 Form, Plaintiff noted he was experiencing "pain in [his] left knee."  (Pl's Ex. C at 37.)  The 79 Form further indicated Plaintiff's admission that "his knee had been injured before this incident."  (Id.)

## CONCLUSIONS OF LAW

The issues before the Court are: (1) whether Defendants removed Plaintiff from the Vehicle by force; (2) if Defendants did remove Plaintiff from the Vehicle by force, whether such force was excessive; (3) whether Defendants used excessive force in handcuffing Plaintiff; and (4) whether Defendants are liable for assault and battery in connection with same.  (See October 2020 Memo & Order at 23-30, 35-36.)  Upon evaluating the evidence presented, the Court answers each of those questions in the negative.  The overwhelming evidence demonstrates Plaintiff exited

the Vehicle on his own accord, and thereafter, when a struggle ensued between Plaintiff and Defendants, Defendants used an amount of force that was reasonable and necessary to apprehend Plaintiff. Accordingly, the Court finds in favor of Defendants.  The Court expounds upon its conclusions in detail below.

"To prevail on a § 1983 claim of excessive force, a plaintiff must show that the defendant used physical force against him that was objectively unreasonable [under] the circumstances." Jackson v. Tellado, 295 F. Supp. 3d 164, 173 (E.D.N.Y. 2018).

> Determining whether the force used to effectuate a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. . . . [T]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

Graham v. Connor, 490 U.S. 386, 396 (1989) (internal citation and quotation marks omitted).  Courts evaluate the totality of the circumstances when determining whether a particular type of seizure was justified.  Id. (citing Tennessee v. Garner, 471 U.S. 1, 8-9 (1985)).  Courts do so by evaluating the circumstances "from

the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Melville v. Does 1-6, No. 18-CV-03765, 2020 WL 5820486, at *4 (E.D.N.Y. Sept. 30, 2020) (quoting Mesa v. City of N.Y., No. 09-CV-10464, 2013 WL 31002, at *18 (S.D.N.Y. Jan. 3, 2013)). Moreover, "[n]ot every push or shove violates the Fourth Amendment, even if it may later seem unnecessary in the peace of a judge's chambers." Id. at *4 (quoting Graham, 490 U.S. at 396)) (internal quotation marks omitted).

I.  Plaintiff Was Not Forcibly Removed from the Vehicle, and Therefore, Was Not Subjected to Excessive Force

As discussed supra in its Findings of Fact, the Court finds Plaintiff exited the Vehicle on his own volition and thus was not subjected to any use of force in that instance. (See supra Findings of Fact; see also n.4.)  It is axiomatic that, where no actual physical force was used, no excessive force was used. See Harper v. Town of Newburgh, No. 18-CV-2647, 2020 WL 1140858, at *11 (S.D.N.Y. Mar. 6, 2020) ("Courts within the Second Circuit have been reluctant to entertain excessive-force claims without any physical contact. Mere threats or verbal harassment, without any appreciable injury, generally are not actionable under [S]ection 1983[.]") (quoting Merrill v. Schell, 279 F. Supp. 3d 438, 442-44 (W.D.N.Y. 2017)) (internal quotation marks omitted); see also Arminio v. Holder, No. 15-CV- 5812, 2019 WL 176804, at *4

9

(S.D.N.Y. Jan. 11, 2019) (dismissing plaintiff's claims where "there [was] no evidence that [d]efendant used excessive force or otherwise acted unlawfully"). Consequently, Plaintiff has not proven his excessive force claim relative to his exit from the Vehicle.

II.  <u>The Force Used by Defendants to Handcuff Plaintiff Was Reasonable and Not Excessive</u>

Upon careful evaluation of the facts and circumstances presented to the Court, including the video evidence of Plaintiff's detainment, the Court concludes the Defendants, and particularly, Officer Pereira,[7] did not use excessive force while handcuffing Plaintiff. (<u>See</u> Tr. 55:12-56:7; Pl's Ex. 10.) As previously stated: "To prevail on a § 1983 claim of excessive force, a plaintiff must show that the defendant used physical force against him that was objectively unreasonable [under] the circumstances." <u>Jackson v. Tellado</u>, 295 F. Supp. 3d at 173. Here, the overwhelming evidence shows that Officer Pereira reasonably believed "there could [have been] a weapon in [the] jacket" Plaintiff reached for

---

[7] The Court notes there is no credible evidence of Officer Kennedy's involvement in the handcuffing of Plaintiff, and therefore, Officer Kennedy cannot be liable for excessive force relative to the handcuffing. (<u>See</u> Tr. 30:11-18 (Officer Kennedy testifying he neither handcuffed Defendant, nor observed the handcuffing).) Accordingly, the excessive force analysis discussed in Part II of this Decision focuses on the actions of Officer Pereira only. For clarity, the Court finds that neither Officer Kennedy nor Officer Pereira is liable for excessive force in relation to any of the acts alleged by Plaintiff.

just prior to his handcuffing, and that such weapon "could have hurt [him] and [his] coworkers and[/or] the occupants of the vehicle." (Tr. 65:4-16.)  This is especially true considering Officer Pereira's observation of the struggle between Plaintiff and the Officers for the jacket, which was prompted by Sergeant McGovern's inquiry as to whether the jacket had been searched for weapons.  (Tr. 50:24-51:7.)  Further, Plaintiff's own testimony demonstrates his belligerence in refusing to obey the Officers' orders, despite Plaintiff shouting he was "not resisting."  (Tr. 77:1-15; 112:15-18.)  Indeed, Plaintiff testified he needed to be "control[led] and "calm[ed] . . . down."  (Tr. 77:1-15.)

        This evidence establishes Officer Pereira's use of force, whereby he briefly kneeled onto Plaintiff's back and affixed handcuffs to Plaintiff's wrists, was objectively reasonable.  In so finding, the Court concludes the reasonableness factors in Graham weigh in favor of Defendants.  Graham, 490 U.S. at 396 (stating, in determining whether use of force was reasonable, courts should consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight").  First, it is undisputed that the Officers responded to a 911 call from a victim who claimed she was being chased by a group of men who may have been armed with a weapon, and who had already caused damage to her car.  (Tr.

11

39:22-40:5; 48:6-16; Defs' Ex. B.)   The underlying incident was therefore "severe" in that it involved a physical altercation and there was a potential weapon at large.   Second, Plaintiff took actions which created a legitimate fear for the safety of the Officers and others and suggested Plaintiff was resisting arrest. Plaintiff both reached for a jacket that Officers reasonably believed may have contained a weapon and failed to obey the Officers' orders to get on the ground.   (Tr. 44:16-19; 44:22-45:8; 52:17-54:7; 65:4-16.)   Indeed, as earlier highlighted, Plaintiff himself stated that, at the time of his handcuffing, he needed to be "control[led] and "calm[ed] . . . down."   (Tr. 77:1-15.)   These circumstances militate in favor of finding Officer Pereira's actions surrounding Plaintiff's handcuffing, including kneeling on Plaintiff's back for a brief time and affixing handcuffs to Plaintiff's wrists, were objectively reasonable such that excessive force was not used.

Other district courts in this Circuit have reached the same conclusion under similar factual circumstances.   See, e.g., Style v. Mackey, No. 17-CV-1691, 2020 WL 3055319, at *5 (E.D.N.Y. June 8, 2020) (finding, as a matter of law, police officer's actions, in placing a knee on [plaintiff's] back "only to effectuate the arrest, [which] was removed as soon as [plaintiff] was brought to his feet" was not excessive force); Paul v. City of Rochester, 452 F. Supp. 2d 223, 228 (W.D.N.Y. 2006) (finding, as

12

a matter of law, police officer's actions were reasonable where he "stepp[ed] on plaintiff's knee and back" and "used his foot to push plaintiff's head to the floor" as a result of plaintiff's movement of his head and leg during the execution of a warrant); see also Tracy v. Freshwater, 623 F.3d 90, 97 (2d Cir. 2010) (finding, as a matter of law, no excessive force where: officers hit plaintiff with a flashlight and jumped on top of plaintiff; plaintiff made a "quick and sudden movement as" the officer attempted to effect an arrest without backup; the crime in question was severe; and the "risk posed to officer safety appeared to be both real and imminent").

Accordingly, the Court concludes Defendants did not use excessive force when detaining Plaintiff.

III. Plaintiff's Assault and Battery Claims Fail

Because Plaintiff's excessive force claims fail, Plaintiff's claims for assault and battery must also fail. "A lawful arrest is not an assault or battery under New York law, provided the force used is reasonable." Rizk v. City of N.Y., 462 F. Supp. 3d 203, 228 (E.D.N.Y. 2020) (quoting Figueroa v. Mazza, 825 F.3d 89, 105 n.13 (2d Cir. 2016)) (further citations omitted). Because the Court concludes the force used by Defendants was reasonable under the circumstances, it also concludes Plaintiff has not proven his claims for assault and battery under state law.

<u>CONCLUSION</u>

For the foregoing reasons, the Court finds in favor of Defendants.  It is therefore **ORDERED, ADJUDGED and DECREED,** that Plaintiff shall take nothing of Defendants.  The Clerk of the Court is directed to enter judgment consistent with these Findings of Fact and Conclusions of Law, and to mark this matter CLOSED.


SO ORDERED.

<u>/s/JOANNA SEYBERT</u>
Joanna Seybert, U.S.D.J.


Dated:    June 12, 2024
          Central Islip, N.Y.

14